## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **ROY E. TOLLIVER, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00977-O-BP** |
| | § | |
| **BANK OF NEW YORK MELLON** | § | |
| **FKA BANK OF NEW YORK, AS** | § | |
| **TRUSTEE FOR THE CERTIFICATE** | § | |
| **HOLDERS OF CWABS INC., ASSET** | § | |
| **BACKED CERTIFICATES, SERIES** | § | |
| **2007-3,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss (ECF No. 8) with Brief and Appendix in Support (ECF Nos. 9–10) filed February 11, 2019 by Defendant Bank of New York Mellon fka The Bank of New York, as Trustee for the certificate holders of CWABS Inc., asset backed certificates, series 2007-3 ("BoNYM"); Plaintiff's Motion for Leave to Amend and Supplement Complaint and for Joinder of Additional Parties (ECF No. 18) filed March 18, 2019 and combined Reply to BoNYM's Motion to Dismiss and Brief in Support of Plaintiff's Motion for Leave to Amend (ECF No. 21) filed March 23, 2019; and BoNYM's Response to Plaintiff's Motion for Leave to Amend (ECF No. 25) with Brief and Appendix in Support (ECF Nos. 26–27) filed April 1, 2019; BoNYM's Reply in Support of Motion to Dismiss (ECF. No 28) filed April 2, 2019; and Plaintiff's Reply in support of his Motion for Leave to Amend (ECF No. 30) filed April 15, 2019. This case was automatically referred by United States District Judge Reed O'Connor to the undersigned for pretrial management pursuant to Special Order 3-251 on December 10, 2018. (*See*

ECF No. 3). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant's Motion to Dismiss (ECF No. 8) and **DISMISS WITH PREJUDICE** Plaintiff's claims.

**BACKGROUND**

Plaintiff Roy E. Tolliver, Jr. ("Tolliver") sued Defendant BoNYM in his original state court petition for quiet title, fraud, breach of contract, violations of the Texas Debt Collection Act ("TDCA"), action for declaratory relief, trespass to try title, for wrongful foreclosure, and for violation of the Texas Deceptive Trade Practices Act ("DTPA"), all concerning BoNYM's actions related to the property located at 2509 Featherstone Court, Arlington, Texas 76001 (the "Property"). (ECF No. 1-2). He sought declaratory and various injunctive relief, actual, statutory, and punitive damages, and attorney fees. (*Id.*). On December 10, 2018, BoNYM timely removed the case to this Court on the basis of diversity jurisdiction. (ECF No. 1).

As more fully described below, Tolliver's Second Amended Complaint ("SAC") (ECF No. 18-1) is the live pleading in this case. Accordingly, the following allegations, taken as true, are derived from Tolliver's SAC and attachments referred to by the SAC and that are central to the case. Tolliver alleges he and his spouse, Sheryl Dickerson, purchased the Property in January 2007. (*Id.* at 5). Tolliver and Ms. Dickerson were informally married on October 25, 2005. (*Id.* at 4). On January 24, 2007, Tolliver and Ms. Dickerson signed a Declaration and Registration of Informal Marriage, which was filed with the County Clerk of Tarrant County. (ECF No. 18-2 at 5). In the declaration, Tolliver and Ms. Dickerson stated their informal marriage began on October 25, 2005. (*Id.*).

In connection with the purchase, a Note in the principal amount of $441,000.00 and a Deed of Trust that granted a security interest in the Property to secure repayment of the Note was

2

executed. Both the Note and the Deed of Trust (together, the "Loan") are attached to the SAC and referred to by Tolliver in the SAC. (ECF No. 18-2 at 7–9, 16–31). Tolliver alleges the Note and Deed of Trust were executed by a "fictitious entity," America's Wholesale Lender ("AWL"). (ECF No. 18-1 at 10). The Deed of Trust, dated January 30, 2007, states the Borrower is Ms. Dickerson, who is described as a single person, and the Lender is America's Wholesale Lender. (ECF No. 18-2 at 16). The Deed of Trust and Note are only executed by Ms. Dickerson. (*Id.* at 9, 30). The Deed of Trust was recorded February 2, 2007 in the Real Property Records of Tarrant County, Texas as Instrument Number D207039416. (*Id.* at 40).

The Loan was modified on April 23, 2010 by Ms. Dickerson and BAC Home Servicing, L.P. ("BAC"). (ECF No. 18-1 at 6). Tolliver attached the loan modification agreement to the SAC. (ECF No. 18-2 at 54–59). The Home Affordable Modification Agreement referred to by Tolliver states the loan will become effective on May 1, 2010. (*Id.* at 55). The modification agreement was signed by Ms. Dickerson on April 23, 2010 and by Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for BAC, on May 10, 2010. (*Id.* at 59). Tolliver was not a signatory to the modification agreement.

Tolliver also attached to the SAC a second loan modification agreement. (ECF No. 18-2 at 62–67). Ms. Dickerson and Bank of America, N.A. ("BANA") executed the agreement. (*Id.*). This modification agreement reamortized the principal due under the Note, which was $410,378.87(*Id.* at 63). The first new payment under the reamortization agreement was due on May 1, 2016. (*Id.*). Although Ms. Dickerson (Ms. Tolliver at the time) signed the reamortization agreement March 31, 2016, BANA did not sign the modification agreement until August 2, 2016. (*Id.* at 66–67).

Initially, MERS, as beneficiary, held the Deed of Trust as nominee for AWL, the Lender. (*Id.* at 17). On August 17, 2017, MERS, as nominee for AWL and its successors and assigns,

assigned the Deed of Trust to BoNYM, and the assignment was recorded on August 21, 2017 in the Real Property Records of Tarrant County, Texas as Instrument Number D217192643. (ECF No. 18-1 at 20; ECF No. 18-2 at 269–270) (the "Assignment"). The Assignment also is attached to the SAC and referred to by Tolliver. Thereafter, BANA, as servicer, executed on behalf of BoNYM an Appointment of Substitute Trustee on November 1, 2017, removing the original trustee and appointing new trustees. (*Id.* at 6; ECF No. 18-2 at 71–72). On November 21, 2017, the 231st Judicial District Court of Tarrant County, Texas appointed a receiver for the Property to forestall foreclosure during pendency of divorce proceedings mentioned below. (*Id.* at 7; ECF No. 18-2 at ). Tolliver alleges that BoNYM first initiated foreclosure proceedings on December 5, 2017 and continued to do so through 2018, citing to Exhibit 9. (*Id.*). Exhibit 9 contains a Residential Contract for the Property that shows the Receiver as the Seller with a closing date of October 31, 2018. (ECF No. 18-2 at 77). A Notice of Substitute Trustee Sale shows a foreclosure sale of the Property scheduled on February 2, 2018. (*Id.* at 93–94).

Eventually Ms. Dickerson moved out of the Property and filed for divorce in May 2017. (ECF No. 18-1 at 6). Tolliver and Ms. Dickerson entered into a Rule 11 Agreement awarding the Property to Tolliver, which was read into the record in their divorce proceedings on December 18, 2018. (*Id.*; ECF No. 18-2 at 96–126). Ms. Dickerson executed a Special Warranty Deed conveying the Property to Tolliver on March 9, 2018. (*Id.* at 7; ECF No. 18-2 at 128–131). The Special Warranty Deed states as consideration for its conveyance to Tolliver that he assumes the unpaid interest and principal under the note and agrees to indemnify and hold Ms. Dickerson harmless from payment of the note and performance under the Deed of Trust. (ECF No. 18-2 at 128). On April 18, 2018, Tolliver executed a Deed of Trust to Secure Assumption to affect the assumption

of the Deed of Trust. (*Id.* at 7; ECF No. 18-2 at 133–140). However, BoNYM is not a signatory to the assumption agreement. (ECF No. 18-2 at 138).

Presumably, Tolliver fell behind on his obligation to pay the Note because he initiated another loan modification process with BANA. (ECF No. 18-1 at 21). Initially, BANA refused to discuss a loan modification with Tolliver because he was not authorized. (*Id.*). Ms. Dickerson signed a third-party authorization on July 31, 2017. (*Id.*; ECF No. 18-2 at 276). Tolliver alleges he completed all of the loan modification documents and submitted them to BANA on May 4, 2018. (*Id.*; ECF No. 18-2 at 278–280).

Tolliver describes at length about his woes in executing a new loan modification with BANA and eventually NewRez LLC fka New Penn Financial, LLC dba Shellpoint Mortgage Servicing ("Shellpoint"). On May 11, 2018, an unnamed BANA representative told him his loan modification had been approved and to expect a loan modification package. (ECF No. 18-1 at 21). However, he never received the package. (*Id.*). Instead, on May 21, 2018, he was notified by BAC that a new loan servicer, Shellpoint, was appointed. (*Id.*). Tolliver recalls an exchange between him and an undisclosed Shellpoint representative on May 23, 2018. The Shellpoint representative told Tolliver that Ms. Dickerson and the receiver stated he would not be getting a loan modification, but that he would still assume the Note. (*Id.*). Tolliver informed the Shellpoint representative that the statement was not true. (*Id.*). The same representative told Tolliver that Shellpoint had not received the records concerning the Loan from BANA and that it could take thirty days to be transferred to Shellpoint. (*Id.*).

Tolliver's SAC describes numerous discussions and communications with Shellpoint representatives and specialists between June 15, 2018 and August 9, 2018, all concerning the loan modification application. (*See generally id.* at 22–24). On August 9, 2018, Shellpoint informed

Tolliver his email address was not authorized on the account. (*Id.* at 24). Tolliver alleges that BoNYM and Shellpoint knew he was authorized, citing to a letter signed by Ms. Dickerson and dated May 31, 2018. (*Id.* at 24; ECF No. 18-2 at 321). The letter is directed to Shellpoint and appears to refer to Tolliver and Ms. Dickerson's divorce proceedings. (ECF No. 18-2 at 321). However, the letter does not refer to any authorized email address. (*Id.*). Tolliver continued his efforts to communicate with Shellpoint, but each time, Shellpoint refused to discuss the loan because he was not authorized on the account. (ECF No. 18-1 at 25). On September 10, 2018, Tolliver emailed BoNYM's counsel concerning his authorization and any alleged revocation of authorization by Ms. Dickerson. (*Id.*). BoNYM's counsel responded, stating Tolliver could not be considered for an assumption and modification of the note because the state court placed the Property in receivership, ordered it to be sold, and denied him the option of retaining the Property through a refinance or modification. (*Id.* at 26; ECF No. 18-2 at 327–28). Counsel also provided a reason for BoNYM's refusal to modify the loan referring to Tolliver's failure to submit a complete loan modification application. (*Id.*).

Tolliver also makes allegations attacking (1) the Deed of Trust's execution and Assignment to BoNYM, arguing AWL did not exist at the time the Note and Deed of Trust were executed; (2) the negotiation of the note, arguing its endorsement was not proper; and (3) the securitization and pooling of the Note. (ECF No. 18-1 at 7–20). However, most of the SAC contains recitation to case law, describes the merger of Countrywide Home Loans, Inc. ("Countrywide") into BANA, and describes the mortgage securitization process. (*Id.* at 4–5, 10–20). Tolliver also alleges that BoNYM has been dual-tracking his loan by foreclosing on the Property while he attempted to modify and assume the Note. (*Id.* at 20).

Tolliver filed the current action, in part, to forestall BoNYM's foreclosure proceeding. (ECF No. 1-2 at 9). He was successful in obtaining a temporary restraining order ("TRO") in the state court, enjoining the foreclosure sale on December 10, 2018. (ECF No. 1-8 at 3). Tolliver amended his petition in response to the Court's Order to Replead on January 24, 2019. In the first amended complaint ("FAC"), Tolliver added two new claims for violation of 12 C.F.R § 1024.41, and civil conspiracy. (ECF No. 7 at 10, 12).

BoNYM filed the instant motion to dismiss the FAC on February 11, 2019. (ECF No. 8). After the Court granted Tolliver an extension, he filed a Motion for Leave to Amend and Supplement Complaint and for Joinder of Additional Defendants, on March 18, 2019, with a proposed Second Amended Complaint ("SAC") attached. (ECF No. 18). In the SAC he added a claim under 24 C.F.R. § 203.604, and contrary to BoNYM's assertion, the SAC did not abandon his wrongful foreclosure claim. (ECF No. 18-2 at 33–34). Additionally, Tolliver seeks joinder of CWABS, Inc.; CWABS Asset Backed Certificates Trust 2007-3; NewRez LLC fka New Penn Financial, LLC dba Shellpoint Mortgage Servicing; Bank of America, N.A., successor by merger to BAC, Countrywide, and AWL as necessary parties to the suit. (ECF No. 18).

On March 21, 2019, Tolliver filed a response brief to BoNYM's Motion to Dismiss, which supports his motion for leave to amend and objects to BoNYM's use of documents outside of the pleadings. (ECF No. 21). The parties timely filed their replies. The motions are now ripe for decision.

## LEGAL STANDARD

### I.   Federal Rule of Civil Procedure 15(a)

Rule 15(a)(1) of the Federal Rules of Civil Procedure provides:

A party may amend its pleading once as a matter of course within:

(A)   21 days after serving it, or

(B)   if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). Rule 15(a) favors of amendment and requires that leave be granted "freely." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982). A court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment. *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Leave to amend "should not be denied 'unless there is a substantial reason to do so.'" *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). A reason is substantial if the proposed amendment would cause undue delay or prejudice to the non-movant, if it is motivated by bad faith or dilatory motives, if there have been repeated failures to cure deficiencies with prior amendment, or if the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). In the Rule 15 context, an amendment is futile if it "would fail to state a claim for relief upon which relief could be granted." *Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). And, if the proposed amendment is futile, a district court may deny leave to amend even when a plaintiff is entitled to amend as a matter of course. *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (citations omitted).

## II.    Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. The Rules require that each complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). A complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

9

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"). Nonetheless, courts may appropriately dismiss an action with prejudice if a court finds that the plaintiff has alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

## ANALYSIS

Before analyzing Tolliver's claims, the undersigned must discuss whether he should be allowed to amend his complaint as a matter of course.

## I.    Proposed Second Amended Complaint

BoNYM contends that because Tolliver has already amended his complaint once, he may only amend his complaint with its written consent or leave of court. (ECF No. 26 at 7). Tolliver did not respond to the argument.

After BoNYM removed the case to this Court and consistent with the undersigned's practice of requiring litigants in removed cases to replead to comply with the federal pleading

standard, the Court entered an order requiring the parties to replead. (ECF No. 5). Tolliver eventually complied with the order on January 24, 2019 after being granted an extension. (ECF No. 7). Ordinarily, a party may amend a pleading only once as a matter of course. *See* Fed. R. Civ. P. 15(a). Because Tolliver repleaded in response to the Court's Order to replead and not in response to a motion to dismiss or the undersigned's recommendation discussing deficiencies in his petition, the undersigned will not view Toliver's FAC as a pleading amended as a matter of course. Accordingly, Tolliver still had an opportunity to replead in response to BoNYM's motion to dismiss as a matter of course under Rule 15(a)(1).

BoNYM filed its Motion to Dismiss on February 11, 2019. (ECF No. 8). Consistent with Rule 15(a)(1)(B), Tolliver had until March 4, 2019 to file an amended complaint as a matter of course. Tolliver received two extension of his response deadline, the last of which was unopposed by BoNYM, setting his new deadline to March 18, 2019. (ECF Nos. 13, 16). Tolliver timely filed his response, which was in the form of a Motion for Leave to Amend. (ECF No. 18).

The Fifth Circuit has not addressed the issue of whether an order granting a plaintiff an extension of time to respond to a motion under Rule 12(b)(6) automatically extends the time to amend a complaint as a matter of course under Rule 15(a)(1). District courts have differing opinions on the issue. *See Tucker Auto-Mation of N. Carolina, LLC v. Rutledge*, No. 1:15-CV-893, 2016 WL 11590593, at *3 (M.D.N.C. Sept. 23, 2016) (discussing cases on both sides). In *Hayes*, the court discussed that the purpose of the 2009 amendments to Rule 15(a) was to require "pleaders to file amended complaints promptly following dispositive motions" and to provide "courts and litigants with an enhanced degree of *notice* of whether a pleader intends to respond to a motion to dismiss via an amended complaint." *Hayes v. D.C.*, 275 F.R.D. 343, 346 (D.D.C. 2011) (emphasis added). The undersigned agrees with *Hayes* and concludes Tolliver provided the requisite notice.

Tolliver's Motions seeking an extension of time to respond to BoNYM's Motion to Dismiss explicitly stated he was requesting an extension of time to file an amended complaint. (ECF Nos. 11, 14). Each time, the Court granted his motions, and referred to his filing an amended complaint in response. (ECF Nos. 13, 16). Under these circumstances, the Court's orders granting him additional time to file an amended complaint also extended his time to file an amended complaint as a matter of course under Rule 15(a)(1). Accordingly, Tolliver's SAC is the live pleading in this case.

Normally, when a party amends a complaint in response to a Rule 12(b)(6) motion, the amended complaint moots a motion to dismiss directed to the prior complaint. *See, e.g.*, *Stredwick v. Dallas Margarita Soc'y, Inc.*, No. 3:12-CV-00623-F, 2012 WL 12893431, at *1 (N.D. Tex. Sept. 4, 2012) (citing cases). However, a court may treat a motion to dismiss as directed to the amended complaint if the defects identified in the prior complaint also appear in the amended complaint. *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir.), *cert. denied*, ___U.S.___, 139 S. Ct. 595 (2018) (citation omitted); *Davis v. Dallas Cnty.*, 541 F. Supp. 2d 844, 848–49 (N.D. Tex. 2008) (treating a motion to dismiss as directed to subsequent complaint because defects remained); *see also People's Choice Home Loan, Inc. v. Mora*, No. 3:06–CV–1709–G, 2007 WL 120006, at *2 (N.D. Tex. Jan. 18, 2007) ("[A] motion to dismiss, which attacks the original complaint for deficiencies that persist in the amended complaint, should not be denied as moot. Rather, the court should apply the motion to dismiss to the amended complaint."). Here, BoNYM's response to Tolliver's Motion for Leave to Amend argues that although the SAC contains new allegations directed to his quiet title, breach of contract, fraud, and conspiracy claims, those claims fail for the same reasons discussed in its Motion to Dismiss. (ECF No. 26 at 8). Further, BoNYM argues that Tolliver's remaining claims also fail for the same reason as stated in its Motion. Thus, the

undersigned recommends that Tolliver's Motion for Leave to Amend be granted as a matter of course, but that BoNYM's Motion to Dismiss be applied to it. (*Id.*). Accordingly, the undersigned applies BoNYM's Motion to Dismiss to Tolliver's SAC.

## II.    Quiet Title

To prevail on a claim for quiet title, the plaintiff must prove: (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *U.S. Nat. Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at \*3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.) (citations omitted)). A plaintiff "must allege right, title, or ownership in [it] with sufficient certainty to enable the court to see [that] [it] has a right of ownership that will warrant judicial interference." *Hurd*, 880 F. Supp. 2d at 767–68 (quoting *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) (quotation omitted)). "Texas courts have made clear that 'a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note.'" *Cook–Bell v. Mortg. Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (quoting *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.) (omission in the original)). "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Tolliver alleges he is the owner of the Property because it was conveyed to him by Ms. Dickerson by Special Warranty Deed, and BoNYM's claim is a cloud on his equity and an unlawful hindrance. (ECF No. 18-1 at 26–27). Tolliver has pleaded sufficient facts to support the

first two elements of his claim to quiet title. Directed toward the third element, Tolliver makes several arguments why BoNYM's claim is invalid. Each argument is taken in turn.

**A.    Chain of title**

Tolliver alleges there is a break in the chain of title sufficient to warrant a claim to quiet title. (ECF No. 18-1 at 27). He claims that BoNYM is not entitled to enforce the note because it was improperly indorsed, and BoNYM is not entitled to enforce the Deed of Trust because the assignment of the Deed of Trust from MERS to BoNYM was invalid and AWL was not a legal entity at the time the Deed of Trust was executed. (*See id.* at 7–9, 20).

*1.    Indorsement of the note*

Tolliver's first argument fails because it is well-established that the Note and Deed of Trust represent separate obligations under Texas law. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254–55 (5th Cir. 2013). This is because "[w]here a debt is 'secured by a note, which is, in turn, secured by a lien, the lien and the note constitute separate obligations.'" *Martins*, 722 F.3d at 255 (quoting *Aguero v. Ramirez*, 70 S.W.3d 372, 374 (Tex. App.—Corpus Christi 2002, pet. denied)). In contrast to enforcing a personal judgment against a borrower, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *McLemore v. CitiMortgage, Inc.*, No. 3:12-CV-713-M BH, 2013 WL 775350, at *4 (N.D. Tex. Feb. 8, 2013) (citing *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011), *adopted by*, No. 3:12-CV-713-M BH, 2013 WL 781601 (N.D. Tex. Feb. 28, 2013). Thus, Tolliver's claim to quiet title based on an allegedly improper negotiation of the Note does not state a valid claim to quiet title.

Notwithstanding, Tolliver is mistaken about the Note's indorsement. Attached to Tolliver's SAC is the Note. (ECF No. 18-2 at 7–9). The Note is part of the pleadings because Tolliver refers

to it in his SAC, and it is central to his claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d

496, 498–99 (5th Cir. 2000). The indorsement reads:

> Pay to the order of
> [blank]
> Without recourse
> Countrywide Home Loans, Inc. a New York Corporation
> Doing Business as America's Wholesale Lender

(ECF No. 18-2 at 9). Immediately below the "Doing Business as" line is a signature block signed

by Countrywide's Executive Vice President. (*Id.*). Tolliver alleges this is a Special Indorsement to

Countrywide. (ECF No. 18-1 at 8–9). But this is plainly contradicted by the attached Note showing

it is an indorsement in blank. *See* Tex. Bus. & Com. Code Ann. § 3.205(a). (West 2002). Further,

in his reply, Tolliver states the "Note . . .  shows an open endorsement [sic]." (ECF No. 30 at 1).

Because the only indorsement on the Note is Countrywide's indorsement in blank, the Note is

payable to the holder and may be negotiated by transfer of possession alone until specially

indorsed. *See id.* § 3.205(b). Accordingly, Tolliver's claim to quiet title based on this theory is not

valid.

### 2.    *Assignment of the Deed of Trust*

Tolliver's allegations related to the Assignment are difficult to ascertain because they are

intermingled with factual detail of the mortgage loan securitization and pooling process. (*See

generally* ECF No. 18-1 at 10–20). What is clear, however, is that BoNYM is the Deed of Trust's

last assignee of record.

Here, Tolliver referred to and attached to the SAC the Assignment and Deed of Trust. (ECF

No. 18-2 at 16–31, 269–70). Thus, like the Note, the Assignment and Deed of Trust become part

of the SAC. The Deed of Trust designated MERS as "beneficiary" and nominee for "Lender" and

its "successors and assigns." (ECF No. 18-2 at 17). Under the Deed of Trust, MERS held legal

title to the interests Ms. Dickerson granted. (*Id.* at 18). MERS had the right to exercise any and all of those interests, including the right to foreclose and sell the Property and to release and cancel the Deed of Trust. (*Id.*). The Assignment refers to the Deed of Trust as executed on July 30, 2007 by Ms. Dickerson to secure repayment of the Note and was recorded on February 2, 2007 in the Real Property Records of Tarrant County, Texas as Instrument No. D207039416. (*Id.* at 40, 269). The Assignment also refers to the same property description contained in the Deed of Trust. (*Id.*). The Assignment was recorded on August 21, 2007 in the Real Property Records of Tarrant County, Texas as Instrument No. D217192643. (*Id.*). The Assignment conveyed all of MERS' rights, title, and interest in the Deed of Trust to BoNYM. (*Id.*). As the last assignee of record, the Assignment to BoNYM is facially valid.

### 3.    *AWL Legal Status*

Tolliver also claims the Deed of Trust is not valid because AWL was not a legal entity at the time it was executed. (ECF No. 18-1 at 9–10). Tolliver alleges that because AWL is listed as "Lender" and a corporation under the laws of New York, the Deed of Trust is invalid. (*Id.* at 27–29).

BoNYM attached two Assumed Name Certificates ("certificates") to its Motion to Dismiss. (ECF No. 27-1 at 2–3, 4–5). Because the documents in question are matters of public record and are central to the case, the undersigned may consider them. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). The earliest certificate was filed on September 15, 1997 and lists AWL as Countrywide's assumed name in Texas, which is valid for ten years. (ECF No. 27-1 at 4). The second certificate was filed on January 15, 2003, which remained valid between February 1, 2003 through February 1, 2013. (*Id.* at 2). The second certificate updates the registered agent's name and address, but otherwise

16

continues AWL as Countrywide's assumed name. (*Id.*). These certificates do not contradict the SAC showing that Countrywide filed another assumed name certificate on September 7, 2007. (ECF No. 18 at 10). The Assumed Name Certificate attached to Tolliver's SAC shows the registered agent was changed yet again and also continues AWL as Countrywide's assumed name. (*Id.*). Together, these certificates show that Countrywide properly registered AWL as its assumed name throughout January 30, 2007, the date on the Deed of Trust. Thus, taking Tolliver's allegations as true, as supplemented by the certificates attached to the SAC and BoNYM's Motion, that are matters of public record and not in dispute, Countrywide's assumed name was valid when the Deed of Trust was executed. Even if Countrywide had failed to properly file an assumed name certificate, it would not impair the validity of the Deed of Trust. *Broemer v. Houston Lawyer Referral Serv.*, 407 S.W.3d 477, 482 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing Tex. Bus. & Com. Code § 71.201 and *Fogal v. Stature Const., Inc.*, 294 S.W.3d 708, 718 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)) (failure to register an assumed name does not impair or invalidate a contract when evidence shows an entity is doing business under the assumed name).

Further, other courts, including one district court in this circuit, have dismissed the same argument made by Tolliver that because AWL did not exist at the time of execution of the Deed of Trust, it is void. *See, e.g.*, *Ostberg v. Bank of Am., N.A.*, 05-17-00255-CV, 2018 WL 2749695, at *3 (Tex. App.—Dallas May 31, 2018, pet. denied); *Paulding v. New Penn Fin., LLC*, No. 17–11340–FDS, 2018 WL 379019, at *1 (D. Mass. Jan. 11, 2018) (plaintiff alleged that "America's Wholesale Lending [sic] was a non-existent, fictitious legal entity that was never incorporated anywhere in the United States") (emphasis omitted); *Kagen v. Countrywide Home Loans, Inc.*, No. D069579, 2016 WL 4939307, at *1 (Cal. Ct. App. Sept. 16, 2016); *Belda v. Bank of Am., N.A.*, No. CV 15–7634 FMO, 2015 WL 12860495, at *2 (C.D. Cal. Nov. 4, 2015) ("According to

17

plaintiff, the DOT is void and of no effect because America'[s] Wholesale Lender did not exist at the time it was executed . . . .") (internal quotations omitted); *Sparks v. The Bank of N.Y. Mellon*, No. H–14–813, 2015 WL 4093944, at *2 (S.D. Tex. July 7, 2015) (debtor argued in opposition to summary judgment motion that note was void because payee America's Wholesale Lender "never existed"); Accordingly, Tolliver's challenge to the Deed of Trust based on this theory fails to state a claim to quiet title.

### B.    Payment on the Note

Tolliver also alleges that he attempted to make payment on the Note, but the payments were refused. (ECF No. 18-1 at 11, 27). However, he does not allege that the payments brought the principal and interest payments current under the Note, has tendered the balance due, or is able to tender the balance due. Taken as true, Tolliver has not alleged facts to establish he has a superior interest in the Property to that of BoNYM. Thus, he has failed to state a claim to quiet title on this basis. *See Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (dismissing plaintiffs' suit to quiet title because plaintiffs failed to allege they were current on their mortgage payments prior to foreclosure).

Having considered all the arguments on Tolliver's claim to quiet title, he has failed to allege enough plausible facts to sruvive BoNYM's Motion to Dismiss.

### III.    Fraud

Tolliver assert a claim for fraud based on allegations challenging the standing of AWL, as previously discussed; the propriety of the loan modification and alleged dual tracking; and the transfer of the Note in that "CWABS never had possession of the note." (ECF No. 18-1 at 33). However, Tolliver does not allege BoNYM or CWABS asset backed certificates trust 2007-3 made any misrepresentations. (*See generally* ECF No. 18-1 at 33).

18

The elements of common law fraud under Texas law are that: (1) a defendant made a false material representation to the plaintiff with knowledge of the statement's falsity or a reckless disregard as to its truth, (2) the defendant intended the plaintiff to rely on the statement, (3) the plaintiff relied on the statement, and (4) the statement caused damage to the plaintiff. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). A claim for common law fraud must meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 736 (N.D. Tex. 2008) (applying Rule 9(b)'s heightened pleading standard to claims for common-law fraud, statutory fraud, and negligent misrepresentation). "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim," and so the Court "must accept the complaint's well-pleaded factual allegations as true." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)

"At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quotation omitted). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Id.* (quotation omitted).

The Fifth Circuit has further explained that, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" and that "[t]he plaintiffs must set forth specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal quotation marks and citations omitted). "Facts that show a defendant's motive to commit the fraud may

sometimes provide a factual background adequate for an inference of fraudulent intent." *United States ex rel. Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 384 (5th Cir.2003).

Here, Tolliver does not specify which of the Defendants made an alleged materially false representation to him upon which he relied. *Thomas v. Bank of New York Mellon*, 3:12-CV-4941-M-BH, 2013 WL 4441568, at *8 (N.D. Tex. Aug. 20, 2013) (dismissing fraud claim for failure to state a claim when plaintiffs sought information to verify defendants' authority to foreclose but were unsuccessful in obtaining them); *Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11–CV–3680, 2012 WL 2568178, at *4 (S.D. Tex. June 28, 2012) (dismissing fraud claim for failure to state a claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to him"). Here, Tolliver does not allege who made the statements regarding AWL's legal status, AWL's mortgage license, or CWABS's possession of the Note; identify the particular fraudulent statement made; if the statements were made to him, or if he relied upon them. Further, he could not have relied upon them because Ms. Dickerson was the only person who signed the Note and Deed of Trust. Thus, these statements cannot form the basis of his fraud claim.

What remains are the allegations concerning BANA's and Shellpoint's actions related to the loan modification process. Tolliver alleges these actions occurred between June 15, 2018 and August 14, 2018. (ECF No. 18-1 at 21–26). Tolliver identified each statement, when they were made, and the person who made them. (*Id.*). However, the only statement that Tolliver identifies as false is the statement made by a loss mitigation specialist representing Shellpoint. (*Id.* at 24). This statement concerned his lack of authority to discuss a loan modification. (*Id.*). Tolliver pleaded that Shellpoint knew this was incorrect, citing to Ms. Dickerson's letter authorizing

Tolliver to discuss with Shellpoint matters related to the Loan. (*Id.*). This allegation contradicts any possibility that he relied on the allegedly false statement. This conclusion is supported by Tolliver's persistence in contacting BoNYM's counsel concerning Ms. Dickerson's alleged revocation of his authority. (*Id.* at 25–26). Further, even if Tolliver had stated the other communication made by Shellpoint or BANA were false, he has failed to allege facts sufficient to show he relied upon those statements. Accordingly, Tolliver has failed to allege enough facts to state a claim for fraud.

## IV.    Breach of Contract and Texas Property Code

Tolliver alleges that because the Deed of Trust states it is governed by federal and Texas law, Defendants failed to properly provide him notice as required by the Deed of Trust. (ECF No. 18-1 at 31). Tolliver also claims he tried to cure any previous default by tendering payments to BANA. (*Id.* at 32). Tolliver attached a check in the amount of $3,461.25 that was allegedly refused. (ECF No. 18-2 at 330). BoNYM argues that Tolliver cannot bring a breach of contract claim because he is not a borrower, and even if he could bring a claim, he breached the Deed of Trust first so BoNYM was under no obligation to perform.

"Under Texas law, a plaintiff alleging a breach of contract must show '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.'" *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ)).

As a preliminary matter, Tolliver does not identify the notice under the Deed of Trust to which he refers to. This alone is enough to sustain BoNYM's Motion to Dismiss because the FAC does not put Defendants on notice of which provision of the Deed of Trust was breached. *See*

*England v. JPMorgan Chase Bank, N.A.*, No. 4:14-CV-183-Y, 2014 WL 12588508, at *2 (N.D. Tex. June 19, 2014) (dismissing Plaintiff's breach of contract claim when the allegations failed to specify which provision of the note or deed of trust required defendant to give plaintiff the right to cure or reinstate the note or requires that defendant demand past-due installments prior to accelerating and attempting to foreclose).

A.    **Borrower Status**

More troubling for Tolliver is that he is not a party to the Deed of Trust or the Note. This poses two problems. First, Tolliver lacks standing to assert a breach of Deed of Trust. Second, because he is not a party to the Deed of Trust, BoNYM or Shellpoint was not obligated to send him any notice.

Under Texas law , "[a] party must establish its privity to the contract or its status as a third-party beneficiary in order to sue for breach of contract." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 287 (5th Cir. 2017) (citing *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 756–57 (Tex. App.—Fort Worth 2012, pet. denied). "In determining whether a third party can enforce a contract, the intention of the contracting parties is controlling." *MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Here, Tolliver is not party to the Note, the Deed of Trust, or any of the subsequent loan modifications, as Ms. Dickerson is the mortgagor. Even if Tolliver had signed the Deed of Trust, "[a] spouse who signs a deed of trust as the spouse of a borrower, but does not sign the loan or note, is not a 'borrower' or 'debtor' entitled to notice of intent to accelerate or intent to foreclosure under Texas law." *Smith v. JPMorgan Chase Bank, N.A.*, No. 4:15-CV-00682-ALM, 2016 WL 11472828, at *6 (E.D. Tex. Aug. 11, 2016) (collecting cases), *adopted by*, No. 4:15-CV-682, 2016 WL 4974899 (E.D. Tex. Sept. 19, 2016), *aff'd*, 699 F. App'x 393 (5th Cir. 2017). Therefore, Tolliver must allege facts to establish

he is a third-party beneficiary. There are three types of third-party beneficiaries: donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. *See MCI Telecommunications Corp. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). Only the first two may enforce contracts to which they are not parties. *Id.* "When the contract confers only an indirect, incidental benefit, a third party cannot enforce the contract." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Here, the substance of the Note and Deed of Trust is not to provide a gift to Tolliver. Nor does the performance of the Note and Deed of Trust satisfy any debt owed to Tolliver. Accordingly, any benefit conferred to Tolliver is merely incidental. Accordingly, he does not have standing to assert a breach of contract claim.

"There is no legal requirement that personal notice of a foreclosure be sent to persons not parties to the deed of trust." *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 856 (5th Cir. 2009) (per curiam) (quoting *Stanley v. CitiFinancial Mortgage Co.,* 121 S.W.3d 811, 817 (Tex. App—Beaumont 2003, pet. denied)). The Deed of Trust does not require any notices be sent to a party who is a successor in interest to the Borrower without first being approved by the Lender.

The Deed of Trust provides that "[a]ll notices be given by Borrower or Lender in connection" with the Deed of Trust. (ECF No. 18-2 at 26). Borrower is defined as Ms. Dickerson, a single person. (*Id.* at 16). Successor in Interest of Borrower is any party who takes legal title to the Property. (*Id.* at 18). Section 13 of the Deed of Trust provides that "[s]ubject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is *approved by Lender*, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided

in Section 20) and benefit the successors and assigns of Lender." (*Id.* at 25) (emphasis added). Section 18 provides that if the Property is "sold or transferred . . . without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by" the Deed of Trust. (*Id.* at 26). Tolliver alleges he assumed the Deed of Trust, citing to the Deed of Trust to Secure Assumption. (ECF No. 18-2 at 130). However, this document is signed only by Tolliver and not BoNYM. Because BoNYM did not approve Tolliver's assumption of the Deed of Trust, he did not assume any of Ms. Dickerson's rights or benefits under the Deed of Trust. Accordingly, Tolliver is not a borrower and BoNYM was not required to provide him with any notice.

Further, Tolliver fails to allege that he was entitled to any notice under the Texas Property Code. Section 51.002(b) requires that notice of the foreclosure sale must be given by . . . (3) serving written notice of the sale by certified mail on each debtor who, *according to the records of the mortgage servicer of the debt*, is obligated to pay the debt." Tex. Prop. Code Ann. § 51.002(b) (West Supp. 2018) (emphasis added). Similarly, section 51.002(d) provides that a "mortgage servicer of the debt shall serve a *debtor in default* under a deed of trust . . . with written notice by certified mail[.]" *Id.* § 51.002(d) (emphasis added). Because Tolliver fails to allege that he is a "debtor in default" or a "debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt," he has failed to state a claim under the Texas Property Code.

Accordingly, Tolliver fails to state a claim based on a lack of required notice because he alleges no facts showing that he was entitled to any notice.

Moreover, Tolliver has not alleged he performed under the Deed of Trust. A "plaintiff must allege [his] own performance, because 'a party to a contract who is [himself] in default cannot maintain a suit for its breach.'" *Villarreal*, 814 F.3d at 767 (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)). In *Villareal*, the United States Court of Appeals for the Fifth Circuit

upheld the district court's dismissal under 12(b)(6) of a breach of contract claim in which the plaintiff had not pleaded facts supporting performance of the contract on the plaintiff's part. *Id.* Here, Tolliver alleges that he attempted to make three payments to clear the default, and he paid tens of thousands of dollars to an entity not entitled to the funds. (ECF No. 18-1 at 32). Section 1 of the Deed of Trust provides that "Lender may return any payment or partial payment if the payment or partial payment is insufficient to bring the Loan current." (ECF No 18-2 at 19). The check attached to Tolliver's SAC is dated April 30, 2018 and is in the amount of $3,461.25. (*Id.* at 330). Tolliver does not allege that any of the amounts he attempted to pay BANA would make the Note current. Because Tolliver has not alleged his own performance under the Note, his breach of contract claim should be dismissed.

## V.    TDCA and DTPA Claims

To state a claim under the TDCA, a plaintiff must allege facts showing: (1) the debt is a consumer debt; (2) defendant is a debt collector within the meaning of the TDCA; (3) defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against plaintiff; and (5) plaintiff was injured as result of defendant's wrongful act. *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 743 (E.D. Tex. 2013). Tolliver alleges Defendants violated TDCA §§ 392.304(a)(8) & (19). (ECF No. 18-1 at 31). He further alleges that Defendants' TDCA violations are also a violation of the DTPA, and therefore he is entitled to injunctive relief. (*Id.* at 34–35).

BoNYM argues that Tolliver is not a consumer under the TDCA. A consumer is an individual with a "consumer debt." Tex. Fin. Code Ann. § 392.001(1) (West 2016). "'Consumer debt' means an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § Ann. 392.001(2).

BoNYM challenges the "obligation" component of the consumer debt definition, arguing that because Tolliver was not actually the person obligated under the Note or had assumed any rights under the Deed of Trust, he is not able to maintain an action under the TDCA. (ECF No. 26 at 13). BoNYM does not cite to any legal authority for this proposition.

The TDCA provides a private right of action to any person who sustained "actual damages as a result of a violation of this chapter." Tex. Fin. Code Ann. § 392.403(a)(2) (West 2016). Texas courts recognize that the TDCA's statutory grant of standing "is not limited to debtors." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 472–73 (5th Cir. 2015). The TDCA is broadly written providing "remedies for 'any person' adversely affected by prohibited conduct, not just parties to the consumer transaction." *Monroe v. Frank*, 936 S.W.2d 654, 660 (Tex. App.—Dallas 1996, pet. dism'd w.o.j.); *see also Campbell v. Beneficial Fin. Co. of Dallas*, 616 S.W.2d 373, 374 (Tex. Civ. App.—Texarkana 1981, no writ) (holding that "persons other than the debtor may maintain an action for violations of the Act"). Thus, so long as Tolliver pleaded actual damages from a TDCA violation by Defendants, he has standing to sue. *McCaig*, 788 F.3d at 473 (citing Tex. Fin. Code § 392.403(a)). Here, Tolliver alleges Defendants' unfair collection proximately caused him actual damages and that he is entitled to recover them under the TDCA. (ECF No. 18-1 at 34). He also claims he is entitled to recover exemplary damages because Defendants' actions were willful, wanton, and malicious. (*Id.*). Further, under the Damages heading of the SAC, he alleges actual damages in the form of duress, anxiety, fear of losing his home, embarrassment, shame, and loss of time from work. (*Id.* at 36). Under Texas law, actual damages include mental anguish. *McCaig*, 788 F.3d at 473 (citing *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002)). Having pleaded actual damages as a result of Defendants' alleged TDCA violations, Tolliver has standing to sue.

26

Nevertheless, Tolliver's allegations supporting Defendants' alleged TDCA violation are conclusory and otherwise fail to state a claim. Section 392.304(a) prohibits a debt collector from the using a "fraudulent, deceptive, or misleading representation," including "(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding" and "(19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code Ann. § 392.304(a)(8) & (19) (West 2016). "To violate the TDCA using a misrepresentation, the debt collector must have made an affirmative statement that was false or misleading." *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015). Tolliver's allegations under this section track the statutory language and therefore are conclusory. Further, Tolliver does not identify what statement made by any of the Defendants was false or misleading. Accordingly, Tolliver has failed to state a claim under these sections of the TDCA.

More specifically, to state a claim under Section 392.304(a)(8), a plaintiff must show that the defendant "made a misrepresentation that led her to be unaware (1) that she had a mortgage debt, (2) of the specific amount she owed, or (3) that she had defaulted." *Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 832 (5th Cir. 2015) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)). Here, Tolliver has not alleged any affirmative statement made by any Defendant to support he was unaware of the Note, the specific amount he owed, or that he had defaulted. Accordingly, his Section 392.304(a)(8) claim should be dismissed. And though Section 392.304(a)(19) operates as a "catchall" provision, a plaintiff still is required to plead facts to establish an "affirmative statement" that was either false or misleading. *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (per curiam). Much like Tolliver's fraud claim,

he has not identified any specific affirmative statement that was false or misleading. Accordingly, his Section 392.304(a)(19) claim also should be dismissed.

Because Tolliver has failed to state a claim under the TDCA, his DTPA tie-in claim also fails as a matter of law. Even if Tolliver could maintain an action under the DTPA, he has not alleged facts establishing he is a consumer. The DTPA defines "consumer" in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2017). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint." *Hurd*, 880 F. Supp. 2d at 765 (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).

Tolliver does not allege he is a consumer under the DTPA. Because the lending of money is not a good or service, a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA. *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex. 1980)). "A mortgagor qualifies as a consumer under the DTPA," however, "if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint." *Miller*, 726 F.3d at 724–25 (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Riverside*, 603 S.W.2d at 175).

Tolliver's allegations concerning the Note and Deed of Trust are incidental to the purchase of the Property. He complains of Defendants' servicing of the Note, assumption and loan modification process, and attempted foreclosure of the Property. "[S]ervicing or administration of the loan is incidental to that objective, and does not bestow consumer status. *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 837 (5th Cir. 2016) (per curiam). Thus, Tolliver's allegations

related to Defendants' servicing and foreclosure activities do not qualify Tolliver as a consumer. Nor do his allegations related to the loan modification process qualify him as a consumer because a modification is closely related to refinancing property already acquired. *Miller*, 726 F.3d at 725. Accordingly, because Tolliver is not a consumer under the DTPA, his claim should be dismissed.

## VI.    Trespass to Try Title

"An action in trespass to try title is the method of determining title to lands, tenements, or other real property." Tex. Prop. Code Ann. § 22.001 (West 2014). This action "is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 235 (Tex. App.—Corpus Christi 1978, no writ.) (citations omitted). To prevail, a plaintiff must either: "(1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Hurd*, 880 F.Supp.2d at 767 (citing *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004)). As with a suit to quiet title, the plaintiff must recover upon the strength of his own title and not the weakness of the defendant's title. *Hurd*, 880 F. Supp. 2d at 767.

Here, Tolliver bases his trespass to try title claim on his superior title to the Property. (ECF No. 18-1 at 32–33). However, as with his quiet title claim, he has not alleged sufficient facts showing how he has superior title to the Property. Moreover, Tolliver has not alleged he has lost possession of the Property. Indeed, the notice of removal shows the state court granted a temporary restraining order restraining any foreclosure sale. (ECF No. 1-8 at 2–3). Tolliver's trespass to try title claim fails for this additional reason. *Price v. U.S. Bank Nat. Ass'n*, No. 3:13–cv–175–O, 2014 WL 803722, at *10 n.8 (N.D. Tex. Feb. 28, 2014); *Hurd*, 880 F. Supp. 2d at 767 ("Since Plaintiff has failed to allege that she has lost possession of the property, her claim for trespass to try title

fails and should be dismissed with prejudice."). Accordingly, Tolliver's trespass to try title claim should be dismissed.

## VII.    Wrongful Foreclosure, RESPA, and HUD claims

Tolliver's allegations in this section are directed only toward BoNYM and Shellpoint. Toliver alleges that these defendants failed to provide any notice of default, intent to accelerate, acceleration of the Note, or the foreclosure sale as required by the Texas Property Code. (ECF No. 18-1 at 33) (wrongful foreclosure claim). Further, he alleges that he did not receive the in-person consultation as required under federal law before initiation of the foreclosure sale. (*Id.*) (U.S. Housing and Urban Development ("HUD") claim). He also alleges BoNYM and Shellpoint impermissibly sought a foreclosure sale while processing his loan modification application, specifically citing to 12 C.F.R. § 1024.41(g). (*Id.* at 34) (the Real Estate Settlement Procedures Act ("RESPA") claim).

### A.    Wrongful Foreclosure

"A wrongful-foreclosure claim under Texas law has three elements: '(i) a defect in the foreclosure sale proceedings; (ii) a grossly inadequate selling price; and (iii) a causal connection between the defect and the grossly inadequate selling price.'" *Villarreal*, 814 F.3d at 767–68 (quoting *Miller*, 726 F.3d at 726). Tolliver's allegations here are conclusory and are not adequate to support any defects in the notices as required by the Texas Property Code or that there is a casual connection between the alleged defects and any inadequate selling price. Further, Tolliver has not pleaded a foreclosure sale has occurred. As stated above, any foreclosure sale was restrained because the state court granted a TRO. (ECF No. 1-8 at 2–3). Accordingly, Tolliver has failed to state a claim for wrongful foreclosure. *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.

2d 725, 729 (N.D. Tex. 2011) ("Texas courts have yet to recognize a claim for 'attempted wrongful foreclosure.'" (citing Texas cases)).

### B.   HUD

Tolliver's HUD claim also should be dismissed. Tolliver only makes a cursory reference to any violation of 24 C.F.R. § 203.604, alleging he did not receive the in-person consultation as required under federal law. (ECF No. 18-1 at 33). However, "HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016). Tolliver does not cite to any section of the Deed of Trust incorporating HUD regulations. Although the Deed of Trust states it is governed by federal and Texas law, (ECF No. 18-1 at 31), a "mere mention that federal law applies can hardly be construed as affording a private cause of action under statutes that do not provide one." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 794 (5th Cir. 2014). Because there is no private cause of action under the HUD regulations, Tolliver has failed to state a claim.

### C.   RESPA

Section 1024.41 generally provides that if a servicer receives a loss mitigation application forty-five days or more before a foreclosure sale, the servicer shall review the application for completeness and notify borrowers of loss mitigation options that may be available to them. *See* 12 C.F.R. § 1024.41. A borrower may enforce section 1024.41 through section 6(f) of the Real Estate Settlement Procedures Act. *See id.* § 1024.41(a) (citing 12 U.S.C. § 2605(f)).

As for BoNYM, Tolliver alleges that Shellpoint is the agent and servicer for BoNYM. (ECF No. 18-1 at 8). Accordingly, any claim asserted against BoNYM under RESPA should be

31

dismissed because it is not a mortgage servicer. *Christiana Tr. v. Riddle*, 911 F.3d 799, 806 (5th Cir. 2018) (holding a bank is not liable for RESPA violations of its servicer).

Although BoNYM did not argue Tolliver lacked standing to assert his RESPA claim, the undersigned's conclusion that Tolliver is not a borrower forecloses his claim. Courts within the Fifth Circuit have held RESPA claims are limited to "borrowers." *Hobbs v. Nationstar Mortg. LLC*, No. 4:18-CV-00496-O, 2018 WL 6305594, at *2 (N.D. Tex. Dec. 3, 2018) (citing *Bridges v. Bank of New York Mellon*, CV H-17-1429, 2018 WL 836061, at *7–*8 (S.D. Tex. Feb. 12, 2018)). As discussed above, Tolliver is not obligated on the Note or Deed of Trust because he is not a party to the Note or Deed of Trust, and BoNYM has not approved him as an obligor. Therefore, he is not a "borrower" and does not have statutory standing. His RESPA claim should be dismissed.

## VIII.   Civil Conspiracy

"The essential elements of a civil conspiracy claim are: 1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as the proximate result ." *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 404–05 (5th Cir. 2013). "Civil conspiracy is a derivative tort; therefore, liability for a civil conspiracy depends on participation in an underlying tort." Id. at 402. "In order to adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort." *Id.* If the underlying tort claim fails, so, too, does the civil conspiracy claim as a matter of law. *See Davis–Lynch, Inc. v. Moreno*, 667 F.3d 539, 553 (5th Cir. 2012) ("To establish the required 'overt act,' a plaintiff must show that the defendant committed an act that, if done alone, would give rise to a cause of action."); *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("Under Texas law, civil conspiracy is a derivative tort. If a plaintiff fails to state a

separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails. Thus, whether Meadows stated a claim for civil conspiracy rises and falls on whether he stated a claim on an underlying tort." (citation omitted)).

Tolliver does not clearly identify the tort underlying his conspiracy claim. He alleges Defendants and other unnamed individuals have conspired against him to defraud him by claiming an interest in the Property through "deception in transferring the Note." (ECF No. 18-1 at 35). Tolliver appears to allege that Defendants conspired to commit fraud. But as discussed above, he has not stated a claim for fraud. Accordingly, his civil conspiracy claim also should be dismissed. *Berry v. Indianapolis Life Ins. Co.*, 600 F. Supp. 2d 805, 814 (N.D. Tex. 2009).

## IX.    Dismissal with Prejudice

Where "[a]n amendment would be futile [because] . . . the complaint as amended would be subject to dismissal," the case should be dismissed with prejudice. *Cal Dive Int'l, Inc. v. Schmidt*, 639 F. App'x 214, 219 (5th Cir. 2016).

Dismissal without prejudice is appropriate if a federal court finds that the plaintiff has not alleged its best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). However, where "[a]n amendment would be futile [because] . . . the complaint as amended would be subject to dismissal," then it should be dismissed with prejudice. *Cal Dive Int'l, Inc. v. Schmidt*, 639 F. App'x 214, 219 (5th Cir. 2016). As mentioned above, Tolliver's state court petition alleged a claim for quiet title, fraud, breach of contract, violations of the TDCA, action for declaratory relief, trespass to try title, for wrongful foreclosure, and for violation of the DTPA. Tolliver added RESPA and civil conspiracy claims in his FAC and added the HUD claim in his SAC. In response to BoNYM's motion to dismiss, Tolliver asked leave of court to file his SAC, which the undersigned recommends be granted as a matter of course. The SAC added more allegations related to

Defendants' actions in negotiating the Note and executing and assigning the Deed of Trust. After reviewing the SAC, along with any attachments properly referred to by the SAC and central to Tolliver's claim and public documents properly noticed, the undersigned concludes Tolliver has stated his best case. Tolliver's SAC is detailed and is supported by several documents of Defendants' alleged misconduct. Despite his efforts, the undersigned concludes any further amendment would be futile. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). Accordingly, Tolliver's claims should be dismissed with prejudice.

## X.    Declaratory and Injunctive Relief

The federal Declaratory Judgment Act ("FDJA") applies to cases removed from state court. *See Thompson v. Bank of America*, N.A., 13 F. Supp.3d 636, 660 (N.D. Tex. 2014) (citing *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013)). The "FDJA is a procedural device that creates no substantive rights . . .  a request for declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action." *Id.*. Further, "an injunction is a remedy that must be supported by an underlying cause of action . . . ." *Crook v. Galaviz*, 616 F. App'x 747, 753 (5th Cir. 2015) (per curiam). Because Tolliver's underlying claims should be dismissed, his requests for declaratory and injunctive relief fail as a matter of law.

## CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendant's Motion to Dismiss (ECF No. 8) and **DISMISS WITH PREJUDICE** Plaintiff's claims.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served

with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed August 5, 2019.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE